J-S79028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KHALEEF MUMIN | |
| Appellant | No. 1960 EDA 2015 |

Appeal from the Judgment of Sentence July 25, 2011
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012875-2009

BEFORE:  GANTMAN, P.J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.: **FILED NOVEMBER 21, 2016**

Khaleef Mumin appeals from the July 25, 2011 judgment of sentence entered in the Court of Common Pleas of Philadelphia County following his jury trial convictions for attempted murder, aggravated assault, conspiracy to commit murder, carrying a firearm without a license, carrying a firearm on public streets in Philadelphia, and possessing an instrument of crime ("PIC").[1]  We affirm.

The trial court set forth the following factual history:

> This case has its roots in a bitter and violent rivalry between two Philadelphia street gangs known as the Lansdowne Avenue Gang ("LA Gang") and the 59th and the Master Street Crew ("MS Crew").  This gang rivalry was apparently sparked by the 2005 murder of [Cornell]

---

[1] 18 Pa.C.S. §§ 901(a), 2702(a)(1), 903, 6106(a)(1), 6108, and 907(a), respectively.

Drummond's cousin, a man known as "Peanut," by "Henry Snail," who was allegedly a member of the MS Crew. *See* N.T. 2/16/11 at 30-31, 101-103; N.T. 2/17/11 at 196-98. In the ensuing years, this ongoing feud resulted in regular shootouts between the two gangs, as well as multiple killings. *See* N.T. 2/16/11 at 34; N.T. 2/17/11 at 196.

On the afternoon of October 23, 2007, Drummond, who was an LA Gang member, was talking to an acquaintance on Redfield Street when he saw two men moving suspiciously in his direction, "ducking behind cars" as they came towards him. N.T. 2/16/11 at 34-39, 128; N.T. 2/17/11 at 196. Convinced that "[these] niggas [were] trying to creep" him,[1] Drummond went to a nearby alley to retrieve his Ruger .45 handgun which he routinely stashed there. N.T. 2/16/11 at 42. However, when Drummond reached the hiding spot, he remembered that earlier that day he had loaned it to "Little Dave," a fellow LA Gang member. N.T. 2/16/11 at 39-42, 129-32. Drummond immediately called Little Dave, who told Drummond to come by his home near the corner of 60th and Media Streets to retrieve the gun. As Drummond approached that intersection, the same two suspicious men suddenly appeared again. They jumped out from behind a vehicle parked approximately a half car length ahead of him, both armed with handguns[.] Id. at 42-44, 132-33. Drummond immediately recognized the men as [Mumin] and co-defendant Tyrik Perez ("Perez"), who were members of the rival Master Street Crew gang. Id. at 26-28, 42-44. As soon as the three men acknowledged each other, [Mumin] and co-defendant Perez began shooting at Drummond. Id. at 42-44, 132-33. Drummond tried to flee but was shot in his back/spine causing him to stumble and fall. Id. at 44-[4]5, 56-57, 133-34. [Mumin] remained near the corner, while codefendant Perez went over [to] Drummond, who was laying on the ground defenseless, and from a[] distance of approximately 18 inches, pulled the trigger three more times. N.T. 2/16/11 at 46-48. Fortunately for Drummond, Perez's gun jammed each time he pulled the trigger. [Mumin] and Perez then fled the scene leaving Drummond critically injured, but still alive. Id. at 48.

---

[1] Meaning that they were trying to get the jump on Drummond in order to do him harm.

Philadelphia police responded quickly to the shooting scene. N.T. 2/17/11 at 79. Police Officer Pamela Roberts, who was first to arrive on scene, repeatedly asked Drummond if he knew who had shot him. Drummond told her that "it was two black males with ski masks on," and that "they finally got me." N.T. 2/16/11 at 49-50; N.T. 2/17/11 at 70-72. Drummond was then taken to the Hospital of the University of Pennsylvania ("HUP") via ambulance. N.T. 2/16/11 at 52, 54.

Assigned Philadelphia Police Detective Ohmarr Jenkins went to HUP shortly thereafter and unsuccessfully attempted to get Drummond to cooperate with the investigation. As recounted by Detective Jenkins:

> I began asking him, 'What happened?' At that time he was uncooperative. He did state, 'They got me.' He indicated it was some young boys from Master Street. I asked him who? He wouldn't tell me who they were. I further asked him a description [of their] height, weight, race, what they were wearing, [et cetera,] and he was uncooperative.

N.T. 2/17/11 at 200. After his unsuccessful attempts to persuade Drummond to cooperate, Detective Jenkins left HUP and returned to the Southwest Detectives Division office at 55th and Pine Streets to continue his investigative efforts. N.T. 2/16/11 at 52-54; N.T. 2/17/11 at 200-201.

The following day, October 24, 2007, Detective Jenkins received an anonymous phone call from an individual who provided Detective Jenkins unspecified information about the Drummond shooting. N.T. 2/17/11 at 202-12. As a result of this information and additional investigative efforts, Detective Jenkins was able to create two photo arrays on October 29 and 30, 2007, one of which included [Mumin's] photo, and the other which included a picture of co-defendant Perez. Id. at 212-14. Detective Jenkins returned to HUP a few days later and showed each of these photo arrays to Drummond, but Drummond did not identify any of the pictured individuals as being his assailants. Id. at 204.

Drummond remained hospitalized at HUP for roughly a month after the shooting. He was then transferred to Magee Rehabilitation Hospital, where he was treated for an

additional two months before being discharged and sent home. N.T. 2/16/11 at 54-55. Despite months of medical treatment, Drummond remains permanently paralyzed from the waist down and is unable to walk or move independently to this day. Id. at 55-56.

[According to Drummond, he] chose not to reveal the identities of his assailants because he wanted to "handle" the situation by killing [Mumin] and Perez himself. Id. at 50, 54-55, 57, 134-35; N.T. 2/17/11 at 59. Before Drummond could get his revenge, however, he was arrested by federal agents and charged with various federal weapons and drug trafficking offenses. N.T. 2/16/11 at 57-58, 111-13; N.T. 2/17/11 at 97-98, 113-15. Though he was initially granted bail regarding these charges, bail was later revoked, and Drummond was held in federal prison as he awaited trial. N.T. 2/16/11 at 112-14.

In March 2009, while awaiting trial on the federal charges, Drummond participated in a proffer session with the Assistant United States Attorney [("AUSA")] handling his case, as well as a number of federal law enforcement personnel. In exchange for consideration of a reduced sentence on the federal charges, Drummond agreed to provide information regarding criminal activity in the 60th and Lansdowne area, which had been the ongoing subject of an extensive investigation by [the] Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Id. at 58-60, 113-15; N.T. 2/17/11 at 98-100. Towards the end of this proffer session, Drummond unexpectedly revealed that the [Mumin] and co-defendant Perez were the two assailants who had shot him on Oct. 23, 2007. Drummond volunteered this information despite the fact that this shooting was not the focus of the ongoing ATF investigation and that the federal authorities did not question him about it. N.T. 2/16/11 at 59-64; N.T. 2/17/11 at 100-10, 117-18, 126-27. Drummond would later explain that he finally implicated [Mumin] and Perez because he:

> just was tired of the game. Like, it wasn't—first of all, I got two daughters that I care about [and] I take care of. So I knew somehow I had to get this behind me. I wasn't going to take a chance at trying

to kill them and leave my daughters out here again. I just got tired, man. Like friends wasn't friends. It was a waste of time to me.

N.T. 2/16/11 at 64 -65. The federal authorities conveyed Drummond's revelation to the Philadelphia Police Department, which ultimately led to the respective arrests of [Mumin] and Perez on May 15, 2009 and May 19, 2009. N.T. 2/17/11 at 119-20, 130-31.

Thereafter, beginning on February 16, 2011 this Court presided over the jury trial of [Mumin] and co-defendant Perez's for the shooting of Cornell Drummond. Over the next few days, the Commonwealth presented Drummond as its main witness, supplementing his testimony with that of Officer Roberts, ATF Agent Gary Malone,[2] Detective Deayoung Park,[3] Detective Jenkins, Detective Donald Liebsch,[4] Officer James Balmer,[5] and Officer Kareem Johnson,[6] as well as various evidentiary materials via stipulation.

[2] Agent Malone "initiated a federal investigation into individuals in the 60th and Lansdowne Avenue area" in 2007, was present at Drummond's proffer sessions in 2009, and reached out to the Philadelphia Police Department after Drummond stated that he had been shot by Mumin and Perez. N.T. 2/17/11 at 97-131.

[3] Detective Park, who was assigned to the Southwest Detective Division's Special Investigation Unit ("SDD SIU") at the time of the Drummond shooting, was part of the team that investigated the crime scene and secured on-site evidence. See N.T. 2/17/11 at 133-48.

[4] Detective Liebsch, who was also assigned to the SDD SIU at the time of the Drummond shooting, testified that he had been contacted by AUSA Fisk on an unspecified date. N.T. 2/18/11 at 17-21. This prompted Detective Liebsch to take a statement from Drummond, in which Drummond specifically stated that he had been shot by Perez and Mumin. Id. at 21-22. In addition, Liebsch showed Drummond two photo arrays, one which contained a picture of Mumin, and the other which

contained a picture of Perez, and asked Drummond to identify which ones were of his assailants; according to Liebsch, Drummond picked both of these pictures "immediately," prompting Liebsch to prepare arrest warrants for both Mumin and Perez. Id. at 22-23.

[5] Officer Balmer testified that he and three other PPD officers (Johnson, Long, and Stephan) pulled over a blue Buick near the intersection of 53rd and Pine Streets on October 24, 2007 (i.e. the day after the Drummond shooting), recounting that they ordered the car's three occupants to roll down their windows and unlock the vehicle's door. N.T. 2/18/11 at 27-29. The occupants did not comply at first, but ultimately did as they were told, whereupon Officer Balmer opened one of the passenger doors and ordered Mumin, who was sitting in the Buick's back seat, to exit the vehicle. Officer Balmer then noticed that Mumin was trying to put something underneath the seat in front of him, which Officer Johnson retrieved and identified as a firearm, prompting Officer Balmer to attempt to place Mumin under arrest. Id. at 30-31. Mumin then punched Officer Balmer in the face, which caused a dogpile as the officers sought to restrain Mumin on the rain-slicked sidewalk next to the Buick. Id. The recovered weapon was loaded with 13 live rounds, which Officer Balmer identified as .357 caliber. Id. at 31-35.

[6] Officer Johnson, who took part in the aforementioned October 24, 2007 arrest of Mumin, testified that he recovered a black Glock handgun from underneath the Buick's passenger seat area near Mumin, and mentioned that Mumin had resisted arrest, stating that "a fight ensued and pretty much [Mumin] just was resisting the entire time. We [i.e. Johnson and his fellow officers] had a pretty tough time trying to get him down." N.T. 2/18/11 at 37-39.

Trial Court Opinion, 3/1/16, at 1-5 ("1925(a) Op.").

On February 22, 2011, a jury found Mumin guilty of the aforementioned charges. On July 25, 2011, the trial court sentenced Mumin to 15 to 30 years' incarceration on the attempted murder conviction; his convictions for aggravated assault and conspiracy merged, for sentencing purposes, with the attempted murder conviction. The trial court also sentenced Mumin to an aggregate term of 3½ to 7 years' incarceration on the two firearms convictions, to run concurrently with the attempted murder conviction. On the PIC conviction, the trial court imposed no further penalty.

Mumin did not file a direct appeal but filed a PCRA petition on August 21, 2012. The trial court appointed counsel, who filed an amended PCRA petition on February 10, 2014, seeking reinstatement of Mumin's post-sentence and appellate rights *nunc pro tunc*. The PCRA court reinstated Mumin's appellate rights on May 27, 2015, and Mumin filed a timely notice of appeal on June 25, 2015.

Mumin raises the following issues on appeal:[2]

1. Is [Mumin] entitled to an arrest on all charges, as the verdict is not supported by sufficient evidence?

_____

[2] In his Pennsylvania Rule of Appellate Procedure 1925(b) statement, Mumin also asserted that the trial court's jury instruction on attempted murder "was unclear that the verdict had to be attempted first degree murder and was unclear as to whether [Mumin] had to have a shared, specific intent to kill if the jury found that he was not the shooter." Statement of Matters Complained of Pursuant to Rule of Appellate Procedure 1925(b), at 2 ("1925(b) Stmt."). However, Mumin failed to raise or address this issue in his brief. Therefore, it is waived. **See** Pa. R. App. P. 2116, 2119.

2. Is [Mumin] entitled to a new trial on all charges where the weight of the evidence does not support the verdict?

3. Is [Mumin] entitled to a new trial as the result of Court error, where the Court permitted evidence of a weapon owned by [Mumin], but where the Commonwealth could not demonstrate that it was the weapon in question, or [that Mumin] possessed [it] during the crime?

Mumin's Br. at 3.[3]

First, Mumin claims that the Commonwealth failed to present sufficient evidence to support his attempted murder and conspiracy convictions. Mumin argues that the evidence showed only that he waited by the corner of 60th and Media Streets while Perez approached Drummond and attempted to kill him and that he fled after hearing the sound of gunshots. Mumin's Br. at 10-11. According to Mumin, the evidence failed to show that he had a specific intent to kill Drummond, as "mere presence at the scene of an offense is not good enough for a conviction." *Id.* at 11. Mumin also challenges his conspiracy conviction, arguing that the evidence showed only that Mumin and Perez were in the same place at the same time. *Id.* at 12-13.

This Court's standard for reviewing sufficiency of the evidence claims is well settled:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when

---

[3] This Court granted the Commonwealth an extension of time to file its brief. Despite this extension, as of the date of this memorandum, the Commonwealth has not submitted a brief.

viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Rodriguez*, 141 A.3d 523, 525 (Pa.Super. 2016) (quoting *Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa.Super. 2012)).

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). To establish attempted murder, the Commonwealth must show that the defendant took "a substantial step towards the commission of a killing, with the specific intent in mind to commit such an act . . ." *In re R.D.*, 44 A.3d 657, 678 (Pa.Super. 2008). The Commonwealth may establish a *mens rea* of specific intent to kill solely through circumstantial evidence. *Id.* Further, "[t]he use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill." *Commonwealth v. Rega*, 933 A.2d 997, 1009 (Pa. 2007).

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that the evidence was sufficient to support Mumin's attempted murder conviction. Drummond testified that Mumin and Perez stalked Drummond together, hiding behind cars until they reached the corner of 60th and Media Streets and called out to him. When Mumin and Perez were half-a-car length away from Drummond, Drummond saw both men holding black handguns, and Perez began to fire. When Perez fired, Drummond fled. When Drummond looked back, he saw both Mumin and Perez firing large, black handguns. Drummond also identified Mumin and Perez at his federal proffer session and in court. The evidence further showed that Mumin had access to similar firearms, as he attempted to hide a black handgun from the police during a traffic stop the next day. The evidence established not only that Mumin was present at the scene but also that he fired at Drummond.[4]

"A person is guilty of conspiracy with another person . . . to commit a crime if with the intent of promoting or facilitating its commission he . . . agrees with such other person . . . that they or one or more of them will

_____

[4] Mumin also raises, in passing, a sufficiency challenge to his aggravated assault conviction, arguing that he "should not have been convicted of aggravated assault and all for the very same reasons" that he should not have been convicted of attempted murder. Mumin's Br. at 12. We conclude that the evidence was sufficient to sustain Mumin's aggravated assault conviction for the much the same reasons that it was sufficient to sustain his attempted murder conviction.

- 10 -

engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime . . ." 18 Pa.C.S. § 903. Thus, to sustain a conspiracy conviction, the Commonwealth must prove "(1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator[,] and (3) an overt act in furtherance of the conspiracy." *Commonwealth v. Spotz*, 756 A.2d 1139, 1162 (Pa. 2000). "Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be proved inferentially by circumstantial evidence, *i.e.*, the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." *Id.*

We conclude that the evidence presented was sufficient to sustain Mumin's conspiracy conviction. Drummond testified that Mumin and Perez moved together down the street to "prey" on Drummond and that Mumin joined Perez in shooting at Drummond after he ran. Mumin and Perez acted in concert, both by moving together from car to car before the shooting and by firing at Drummond 15 to 20 times. That Mumin then stood on the corner while Perez moved in to shoot Drummond in close proximity does not alter Mumin's prior actions. The Commonwealth was not required to prove an express verbal or written agreement between Mumin and Perez; their actions and the surrounding circumstances were sufficient to show intent, agreement, and an overt act.

Mumin next alleges that the verdict was against the weight of the evidence. Mumin asserts, as in his sufficiency argument, that he was merely

present at the scene of the crime, the Commonwealth presented no evidence of an agreement between Mumin and Perez, and Mumin did not assist Perez in attempting to kill Drummond.  Mumin's Br. at 14-15.  However, Mumin failed to preserve this issue for appellate review.  Pennsylvania Rule of Criminal Procedure 607 sets forth the requirements for preserving a weight of the evidence challenge:

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
>> (1) orally, on the record, at any time before sentencing;
>>
>> (2) by written motion at any time before sentencing; or
>>
>> (3) in a post-sentence motion.

Pa. R. Crim. P. 607(A).  The certified record establishes that Mumin did not file a motion with the trial court challenging the weight of the evidence.[5] Although Mumin raised the weight issue in his 1925(b) statement, and the trial court addressed it, we are unable to review it.  **See Commonwealth v. Thompson**, 93 A.3d 478, 490-91 (Pa.Super. 2014) (declining to review

---

[5] In his PCRA petition, Mumin asked the PCRA court to reinstate both his post-sentence and appellate rights *nunc pro tunc*.  However, the PCRA court's order only granted reinstatement of Mumin's appellate rights. Regardless, the record reflects that Mumin filed no motion challenging the weight of the evidence, even after the PCRA court reinstated Mumin's appellate rights.

weight challenge where appellant failed to raise issue, even though trial court addressed it in its opinion).[6]

Mumin's final challenge is to the admission of evidence that he possessed a semiautomatic handgun subsequent to the charged offenses to prove that Mumin had access to weapons similar to the one drawn on and fired at Drummond. Specifically, Mumin asserts that the trial court erred in failing to conduct a Pennsylvania Rule of Evidence 403 balancing test to determine whether the evidence's probative value "was outweighed by the danger of unfair prejudice." Mumin's Br. at 16.[7]

Mumin first argues that the court erred in failing to conduct the Rule 403 balancing test **on the record**. *Id.* However, because Mumin did not

---

[6] Even if Mumin had preserved this challenge, he would not be entitled to relief. As discussed in connection with his sufficiency claim, the record contains ample evidence of both conspiracy and attempt. We agree with the trial court that Mumin's "claim[] regarding weight . . . of the evidence [is] without merit." 1925(a) Op. at 9.

[7] In its opinion, the trial court recommended that we find that Mumin waived this issue because he "failed to provide any legal grounds that this evidence was irrelevant and more prejudicial than probative." 1925(a) Op. at 9. However, at a minimum, Mumin's Rule 1925(b) statement addresses a relevancy issue and a Rule 403 issue with respect to the handgun. **See** 1925(b) Stmt. at 2. Further, the trial court meaningfully addressed this issue in its opinion. **See** 1925(a) Op. at 9-10. Therefore, our review has not been hindered, and we will address the issue on the merits. **See Commonwealth v. Smith**, 955 A.2d 391, 393 (Pa.Super. 2008) (reaching merits of case where trial court's opinion meaningfully addressed Commonwealth's vague 1925(b) statement).

raise this issue in his 1925(b) Statement, it is waived. ***See Commonwealth v. Lord***, 719 A.2d 306, 308 (Pa. 1998).[8]

Alternatively, Mumin argues that the trial court should have precluded the evidence under Rule 403 because the probative value of the evidence paled in comparison to its prejudicial nature, considering the "political controversy over weapons" and that "the issue was not whether [Mumin] was an actual perpetrator of the shooting, but rather . . . whether he was a co-conspirator[,] whether he was an accomplice[,] and whether he shared a specific intent to kill." Mumin's Br. at 17. We disagree.

The trial court did not abuse its discretion by admitting evidence that Mumin possessed a handgun the day after the shooting. ***See Commonwealth v. Edwards***, 903 A.2d 1139, 1156 (Pa. 2006) (citation omitted) ("The admission of evidence is a matter committed to the sound discretion of the trial court, and the court's evidentiary decisions will not be overturned absent an abuse of discretion"). The trial court allowed the evidence for a "limited purpose, that is, to show that Mumin had access to

---

[8] Even if Mumin had preserved this claim for review, he cites no authority for the position that the trial court was required to place its Rule 403 analysis on the record. Rather, "[w]e presume that trial courts know the law . . . .[and s]uch weighing and the general consideration of the admissibility of evidence is a discretionary ruling which trial courts routinely engage in mentally[,]" which does not require the trial court to "record [its] mental deliberations on the record." ***Commonwealth v. Hairston***, 84 A.3d 657, 667 (Pa.), *cert. denied*, 135 S.Ct. 164 (2014).

this type of weapon." N.T. Motion, 2/14/11, at 12; *see* 1925(a) Op. at 10. It considered prior cases discussing the "similar weapon exception," which allows the Commonwealth to present weapons not directly linked to the crime for the purpose of showing access, knowledge, familiarity, and preference for particular types of weapons. *See* 1925(a) Op. at 10. Further, the evidence showed that the shooters used large, black semiautomatic handguns that ejected fired cartridge casings,[9] and, when arrested the next day for a different offense, Mumin hid a black, semiautomatic handgun beneath the passenger seat of the car in which he was traveling. Further, the trial court considered the possible prejudice of evidence that Mumin possessed a handgun the day after the shooting in reaching its decision. *See* 1925(a) Op. at 10. Under these circumstances, the trial court properly admitted evidence regarding the recovered handgun. *See, e.g. Commonwealth v. Broaster*, 863 A.2d 588, 591 (Pa.Super. 2004) (allowing Commonwealth to present handgun, which was not murder weapon, recovered three months later to "demonstrate [a]ppellant's access to and preference for the same type of weapon . . . as used in [the] murder").

Judgment of sentence affirmed.

_____

[9] According to Detective Park, the presence and pattern of fired cartridge casings at the scene indicated that at least one semiautomatic weapon was used. N.T., 2/17/11, at 136-37, 148-151.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/21/2016</u>